1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7    DAVID BROWN,                          Case No. 23-cv-00671-JST

8                     Plaintiff,

9         v.                               **ORDER GRANTING IN PART AND
                                           DENYING IN PART DEFENDANTS'
10   LIEUTENANT BASS, et al.,              MOTION TO DISMISS; SETTING
                                           BRIEFING SCHEDULE**
11                    Defendants.
                                           Re: ECF No. 20
12

13          Plaintiff David Brown has filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983

14   against the following San Quentin Rehabilitation Center ("SQRC") correctional officials:

15   lieutenant Bass and sergeants Taylor, Simpson, and E. Castillo.  Now pending before the Court is

16   Defendants' motion to dismiss the complaint.  ECF No. 20.  Plaintiff has not filed an opposition,

17   and the deadline to do so has since passed.  For the reasons set forth below, the Court GRANTS

18   IN PART AND DENES IN PART Defendants' motion to dismiss.  ECF No. 20.

19                                       **DISCUSSION**

20   **I.     Background**

21          On or about February 15, 2023, Plaintiff commenced this action by filing the complaint

22   docketed at ECF No. 1.  In this initial complaint, Plaintiff alleged that, on October 8, 2022, he and

23   other male inmates were subject to a non-emergency unclothed body search in view of a public

24   street with residential homes, a staff parking lot, two female correctional officers, and two female

25   medical staff members; that no privacy shielding was provided; that defendant Bass ordered the

26   unclothed body search; that defendants Taylor and Simpson supervised the search; and that female

27   correctional officer E. Castillo and another female officer viewed the search.  *See generally* ECF

28   No. 1.  The Court dismissed this complaint with leave to amend.  The Court stated that Plaintiff

United States District Court
Northern District of California

had presented troubling allegations but that further information was needed before the Court could determine whether Plaintiff had stated a claim under the governing law.  The Court instructed Plaintiff to file an amended complaint that stated what role female correctional officers played in the strip search, how close they were to him during the search, whether he believes that these kinds of searches are a regular practice at his facility, and the actions of the other individual defendants.  *See generally* ECF No. 7.

Plaintiff filed an amended complaint, ECF No. 8, which made the following allegations. On October 8, 2022, defendants Bass, Simpson and Taylor ordered the unclothed body inspection of Plaintiff and other male inmates.  The inspection exposed Plaintiff's genitals, perineum, and anus.  The inspection was conducted "on the open air grounds of the H-Unit yard," without the benefit of privacy shielding, and within view of female correctional staff.  In particular, E. Castillo, a female CDCR official, was present at the time of the strip search and within "eye sight range."  Plaintiff does not believe that this unclothed body inspection is a regular practice at the facility.  The complaint seeks the following relief: "For a fair amount of money awarded.  A civil penalty to conducted.  And to be awarded to person (me) the right for damages to me.  For humiliation, indignity and invasion that I suffer by depression and anxiety."  ECF No. 8 at 2–3.

The Court screened the amended complaint and found that it stated a cognizable § 1983 claim against lieutenant Bass, sergeants Taylor, Simpson and E. Castillo:

> A cross-gender strip search that involves touching the inmate's genitalia and searching inside his anus is unreasonable as a matter of law in a non-emergency situation.  *Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1142 (9th Cir. 2011) (en banc) ("*Byrd I*"). Even so, not all searches by guards of a different gender are illegal. *See Grummett v. Rushen*, 779 F.2d 491, 494 (9th Cir. 1985) (affirming use of female officers within a correctional facility who occasionally viewed male inmates in various stages of undress and conducted routine pat-downs of fully clothed inmates).  This is not inconsistent with *Byrd I*.  *See Byrd I*, 629 F.3d at 1142.  Assigned positions of female guards that require only infrequent and casual observation, or observation at a distance, of unclothed male prisoners and that are reasonably related to prison needs are not so degrading as to warrant court interference.  *See Michenfelder v. Summer*, 860 F.2d 328, 334 (9th Cir. 1988); *Grummett*, 779 F.2d at 494-95; *see also Jordan v. Gardner*, 986 F.2d 1521, 1524-25 (9th Cir.1993) (en banc) (privacy interest in freedom from cross-gender clothed body searches not "judicially recognized").  The question is whether officers regularly or frequently observe unclothed inmates

1
2
3
4
5

of the opposite sex without a legitimate reason for doing so.  *See Michenfelder*, 860 F.2d at 334; *cf. Byrd v. Maricopa Cty. Bd. of Supervisors*, 845 F.3d 919, 922-25 (9th Cir. 2017) ("*Byrd II*") (reversing dismissal for failure to state a claim when pretrial detainee alleged that defendants' policy of permitting female guards to regularly view his bathroom and shower use from 4-5 feet away violates his 4th and 14th Amendment rights).  Liberally construed, the *pro se* amended complaint states a cognizable claim against lieutenant Bass, sergeants Taylor, Simpson and E. Castillo who organized and viewed the search.

6    ECF No. 11 at 2-3.

7    **II.     Motion to Dismiss**

8         **A.     Legal Standard**

9         A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's

10   complaint.  *See City of Oakland v. BP PLC*, 969 F.3d 895, 910 (9th Cir. 2020).  Under the "notice

11   pleading" standard of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide a

12   short and plain statement of the plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P.

13   8(a)(2); *see also Knapp v. Hogan*, 738 F.3d 1106, 1109 (9th Cir. 2013).  A court may dismiss a

14   complaint for lack of cognizable legal theory or if the facts alleged fail to suffice under a

15   cognizable legal claim.  *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 982 (9th Cir. 2017).  However,

16   a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief

17   that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

18        In considering a motion to dismiss, the Court accepts as true all well-pleaded allegations

19   and  construes them in the light most favorable to the plaintiff.  *Polanco v. Diaz*, 76 F.4th 918,

20   925(9th Cir. 2023).  Notwithstanding this deference, the reviewing court "need not accept as true

21   allegations that contradict matters properly subject to judicial notice or by exhibit," *Produce Pay,*

22   *Inc. v. Izguerra Produce, Inc.*, 39 F.4th 1158, 1161 (9th Cir. 2022), and need not accept as true

23   legal conclusions cast in the form of factual allegations, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678

24   (2009).  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual

25   content, and reasonable inferences from that content, must be plausibly suggestive of a claim

26   entitling the plaintiff to relief."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009)

27   (quotations and citation omitted).  "*Pro se* complaints must be held to less stringent standards than

28   formal pleadings drafted by lawyers, especially when they are civil rights claims by inmates."

United States District Court
Northern District of California

3

*Tiedemann v. von Blanckensee*, 72 F.4th 1001, 1007 (9th Cir. 2023).  In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).

### B.      Analysis

Defendants arugue that this action should be dismissed because Plaintiff has not alleged facts sufficient to demonstrate that Defendants violated his Fourth or Fourteenth Amendment rights; because the relief sought is unavailable as a matter of law, and because Defendants are entitled to qualified immunity.  ECF No. 20.  Plaintiff has not responded to the motion to the dismiss, and the deadline has passed.  The Court addresses each argument in turn below.

### 1.      Fourth and Fourteenth Amendment Claim

Defendants argue that Plaintiff has not alleged facts sufficient to demonstrate that Defendants violated his Fourth Amendment right to be free from unreasonable searches or his Fourteenth Amendment due process right to bodily privacy for the following reasons.  First, Defendants argue that Plaintiff has failed to state a claim because he has not alleged that the search took place during a non-emergent time, and the relevant Ninth Circuit caselaw holds that a cross-gender strip search that involves touching the inmate's genitalia and searching inside his anus is unreasonable as a matter of law only in a non-emergency situation, citing to *Byrd v. Maricopa Cnty. Sheriff's Dep't.*, 629 F.3d 1135, 1141 (9th Cir. 2011) ("*Byrd I*").  Second, Defendants argue that the strip search was constitutional as a matter of law because it took place outside Plaintiff's cell in a common area where other prisoners were being subjected to strip searches and because Plaintiff has not alleged egregious conduct by Defendants.  In support of this argument, Defendants cite to *Johnson v. Robertson*, No. 20-cv-04803-EMC, 2020 WL 10505723, at *2 (N.D. Cal. Nov. 13, 2020), for the proposition that, so long as a prisoner is presented with the opportunity to obtain contraband or a weapon while outside of his cell, a visual strip search has a legitimate penological purpose; and to *Bell v. Wolfish*, 441 U.S. 520, 558 (1979), for the proposition that prisoners may be subjected to strip searches and cavity searches if they are

4

conducted in a reasonable manner.  Third, Defendants argue that the strip search did not violate either the Fourth or Fourteenth Amendment because it happened once and was not a regular occurrence, citing to *Byrd I*, 860 F.3d at 922-25, for the proposition that the relevant question in determining whether a cognizable constitutional claim is stated is whether officers regularly or frequently observe unclothed inmates of the opposite sex without a legitimate reason for doing so. Fourth, Defendants argue that the claims fail as a matter of law because Plaintiff has not alleged harm sufficient to rise to the level of a constitutional deprivation because the "bare" allegation that he suffered humiliation, indignity, invasion depression, and anxiety is "simply insufficient to support a plausible section 1983 claim," and because there is no allegation that defendant Castillo looked at Plaintiff, touched him, or was near him.  Finally, Defendants argue that, as a matter of law, the allegation that a female officer was in eyesight range while male officers performed an unclothed visual body cavity search outside of an inmate's cell based on a legitimate penological interest is not objectively harmful enough to establish a constitutional violation.

The Court DENIES Defendants' motion to dismiss the Fourth and Fourteenth Amendment claims based on the argument that the operative complaint fails to state a Fourth or Fourteenth Amendment claim as a matter of law.  Defendants have overstated the holdings of the cited cases, and overlooked the requirement that courts liberally construe *pro se* pleadings.  *See United States v. Qazi*, 975 F.3d 989, 993 (9th Cir. 2020) ("We are specifically directed to construe pro se pleadings liberally.  This duty applies equally to pro se motions and with special force to filings from pro se inmates.") (internal quotation marks and citations omitted).  Whether a cross-gender strip search violates the Fourth Amendment prohibition on unreasonable search and seizure depends on (1) the scope of the particular intrusion, (2) the manner in which it is conducted, (3) the justification for initiating it, and (4) the place in which it is conducted.  *Byrd v. Maricopa Cnty. Bd. of Supervisors*, 845 F.3d 919, 922 (9th Cir. 2017) ("*Byrd II*").  Whether a cross-gender search violates the Fourteenth Amendment right to bodily privacy depends on whether (1) there is a valid, rational connection between the search and the legitimate governmental interest put forward to justify it; (2) there are alternative means of exercising the Fourteenth Amendment right; (3) the impact accommodation of the Fourteenth Amendment right will have on guards and other inmates,

and on the allocation of prison resources; and (4) there is an absence of ready alternatives." *Id.* at 923–24.  Defendants have cited the following cases in support of their argument that, as a matter of law, the facts alleged in the operative complaint fail to state either a Fourth or Fourteenth Amendment claim: *Byrd v. Maricopa Cnty. Sheriff's Dep't.*, 629 F.3d 1135, 1141 (9th Cir. 2011) ("*Byrd I*"); *Michenfelder v. Sumner*, 860 F.2d 238 (9th Cir. 1977); *Grummett v. Rushen*, 779 F.2d 491, 494 (9th Cir. 1985); *Jordan v. Gardner*, 986 F.2d 1521 (9th Cir. 1993); *Johnson v. Robertson*, No. 20-cv-04803 EMC, 2020 WL 10505723 (N.D. Cal. Nov. 13, 2020); *Bell v. Wolfish*, 441 U.S. 520 (1979).  None of these cases dismissed, or affirmed the dismissal of, Fourth and Fourteenth Amendment claims regarding cross-gender strip searches with prejudice at the screening stage or the motion to dismiss stage.  *See, e.g., Byrd I*, 692 F.3d at 1138, 1140-47 (after trial and presentation of evidence, district court granted judgment as a matter of law; Ninth Circuit reversed, holding that cross-gender strip search was "unreasonable as a matter of law *under the facts of this case*") (emphasis added); *Michenfelder*, 860 F.2d at 330-34 (after two-day trial, district court found cross-gender searches to be constitutional; Ninth Circuit affirmed after reviewing evidence presented at trial); *Grummett*, 779 F.2d at 492-96 (district court granted summary judgment in favor of prison officials; Ninth Circuit affirmed based on detailed record regarding particulars of how cross-gender searches were conducted and impact on prison if women were barred from challenged positions); *Johnson*, 2020 WL 10505723, at *1-*2 (allegation that female guard observed strip search insufficient to state constitutional claim; dismissed claim with leave to amend to allege how close female guard was and what role (if any) she played in strip search); *Bel*, 441 U.S. at 558-60 (same-gender strip searches); *Jordan*, 986 F.2d at 1522-31 (Eighth Amendment challenge to strip searches of female inmates by male prison guards; district court enjoined searches after seven-day trial and Ninth Circuit affirmed based on record).  Here, liberally construed, the operative complaint alleges that Plaintiff was subjected to an unclothed body search in a manner that caused him embarrassment and humiliation, namely that his genitals, perineum, and anus were exposed to a female correctional officer, E. Castillo, who was close enough to view him during the search, and that no privacy shields were provided; and that although the search was a one-time occurrence, there was no justification for the manner

1    in which this search was carried out.  This allegation is sufficient to state both a Fourth

2    Amendment and a Fourteenth Amendment claim.  *Byrd II*, 845 F.3d at 922-24.

3                    **2.      Legal Availability of Requested Relief**

4              Defendants argue that, in the alternative, this action should be dismissed because the relief

5    requested – monetary damages – is legally unavailable.  Defendants argue that Plaintiff has only

6    alleged mental and emotional injury, and the Prisoner Litigation Reform Act (PLRA), 42 U.S.C.

7    § 1997e(e), requires prisoner-plaintiffs to first show that they suffered a physical injury because

8    they may recover damages for mental or emotional injuries suffered while incarcerated.  ECF No.

9    20 at 12-13.  The Court agrees that 42 U.S.C. § 1997e(e) provides that Plaintiff may not seek

10   monetary damages for his mental or emotional injuries.  *See* 42 U.S.C. § 1997e(e) ("Limitation on

11   Recovery.  No Federal civil action may be brought by a prisoner confined in a jail, prison, or other

12   correctional facility, for mental or emotional injury suffered while in custody without a prior

13   showing of physical injury or the commission of a sexual act (as defined in section 2246 of title

14   18).").  However, 42 U.S.C. § 1997e(e) does not bar claims seeking nominal or punitive damages

15   that are not premised on any specified injury.  *See Oliver v. Keller*, 289 F.3d 623, 627-29 (9th Cir.

16   2002) ("To the extent that appellant's claims for compensatory, nominal or punitive damages are

17   premised on alleged Fourteenth Amendment violations, and not on emotional or mental distress

18   suffered as a result of these violations, § 1997e(e) is inapplicable and those claims are not

19   barred.").  Although the operative complaint does not specify the kind of damages Plaintiff seeks,

20   the Court liberally construes Plaintiff's request for relief as seeking compensatory damages,

21   nominal damages, and punitive damages for both his emotional and mental injuries and also for

22   the constitutional violations.  *See Oliver*, 289 F.3d at 630 (liberally construing *pro se* complaint to

23   include claim for nominal damages for constitutional violations where complaint sought only

24   compensatory and punitive damages).  Accordingly, the Court DISMISSES Plaintiff's claims for

25   compensatory damages for Plaintiff's mental and emotional injuries, but does not dismiss the

26   claims for nominal and punitive damages for the alleged constitutional violations.

27                    **3.      Qualified Immunity**

28             Defendants argue that this action should be dismissed because they are entitled to qualified

United States District Court
Northern District of California

immunity from damages in their individual capacity because Plaintiff has failed to state a cognizable Fourth or Fourteenth Amendment claim and because it was not clearly established at the time of the events in question that Defendants' alleged actions violated the Constitution, citing to *Grummett*, 799 F.2d at 494, for the proposition that a system of assigning female officers within a correctional facility such that they occasionally viewed male inmates in various states of undress and conducted routine pat-downs of fully clothed inmates was constitutional, and to *Johnson*, 2020 WL 10505723, at *2, for the proposition that a claim is not stated based on the allegations that the strip search was observed by several guards including a female guard.

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In considering a claim of qualified immunity, the Court must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). While courts may consider qualified immunity at the pleadings stage, the Ninth Circuit has noted that "[d]etermining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making" because it requires the court to balance competing rules – the prohibition on dismissing a complaint as long as it makes a claim to relief that is plausible on its face and defendants' entitlement to qualified immunity so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Keates v. Koile*, 883 F.3d 1228, 1234–35 (9th Cir. 2018) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A motion to dismiss based on qualified immunity requires the court "to decide far-reaching constitutional questions on a nonexistent factual record." *Kwai Fun Wong v. United States*, 373 F.3d 952, 957 (9th Cir. 2004), *overruled in part on other grounds by Wilkie v. Robbins*, 551 U.S 537 (2007). "When, as here, defendants assert qualified immunity in a motion to dismiss under Rule 12(b)(6), dismissal is not appropriate unless we can determine, based on the complaint itself, that qualified immunity applies." *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir.

8

2016) (cleaned up); *see also Keates*, 883 F.3d at 1235 ("[O]ur decision at the motion-to-dismiss stage sheds little light on whether the government actors might ultimately be entitled to qualified immunity 'were the case permitted to proceed, at least to the summary judgment stage' and the court is presented with facts providing context for the challenged actions." (citation omitted)). Defendants are not entitled to a blanket ruling of qualified immunity at this stage in the action because it is unclear from the operative complaint if the cross-gender strip search was justified; if the search was conducted in a reasonable manner, given the circumstances; if there were alternative means of allowing Plaintiff to exercise his Fourteenth Amendment right to bodily privacy; if there were ready alternatives to conducting the search in defendant Castillo's presence; and the impact of ensuring that female officers were not present during the strip search would have on guards, other inmates, and the allocation of prison resources.  The Court therefore DENIES Defendants' motion to dismiss based on qualified immunity grounds.  While Defendants may ultimately prevail on many of the arguments they make now with respect to qualified immunity, because the qualified immunity analysis often turns on the specific facts of each alleged violation, the Court finds that the qualified immunity arguments are better suited to summary judgment.

## CONCLUSION

For the reasons set forth below, the Court ORDERS as follows.

1.      The Court GRANTS IN PART AND DENIES IN PART Defendants' motion to dismiss.  The Court GRANTS Defendants' motion to dismiss Plaintiff's request for relief arising out of his mental and emotional injuries, and DISMISSES Plaintiff's claims for compensatory damages for his mental and emotional injuries.  The Court DENIES the remainder of Defendants' motion to dismiss.

2.      The Court sets the following briefing schedule.  No later than 91 days from the date this order is filed, Defendants must file and serve a motion for summary judgment or other dispositive motion.  If Defendants are of the opinion that this case cannot be resolved by summary judgment, Defendants must so inform the Court prior to the date the motion is due.  Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the Court and served upon Defendants no later than 28 days from the date the motion is filed.  Plaintiff must bear

United States District Court
Northern District of California

in mind the notice and warning regarding summary judgment provided later in this order as he prepares his opposition to any motion for summary judgment. Defendants shall file a reply brief no later than 14 days after the date the opposition is filed. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion.

A motion for summary judgment also must be accompanied by a *Rand* notice so that Plaintiff will have fair, timely, and adequate notice of what is required of him in order to oppose the motion. *Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012) (notice requirement set out in *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), must be served concurrently with motion for summary judgment).[1] Plaintiff is advised that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact – that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(c), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand v. Rowland*, 154 F.3d 952, 962–63 (9th Cir. 1998) (en banc) (App. A). (The *Rand* notice above does not excuse Defendants' obligation to serve said notice again concurrently with a motion for summary judgment. *Woods*, 684 F.3d at 939).

---

[1] If Defendants assert that Plaintiff failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a), Defendants must raise such argument in a motion for summary judgment, pursuant to the Ninth Circuit's opinion in *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (en banc) (overruling *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003), which held that failure to exhaust available administrative remedies under the Prison Litigation Reform Act, should be raised by a defendant as an unenumerated Rule 12(b) motion).

United States District Court
Northern District of California

3. The Court reminds Plaintiff that if the address changes for a *pro se* party while an action is pending, the *pro se* party must promptly file with the Court and serve upon all opposing parties a Notice of Change of Address specifying the new address. N.D. Cal. L.R. 3-11(a). The Court has reviewed the California Department of Corrections and Rehabilitations' California Incarcerated Records and Information Search ("CIRIS"), which may be accessed at https://ciris.mt.cdcr.ca.gov/search, and it appears that Plaintiff is no longer in custody. Plaintiff should promptly file a Notice of Change of Address informing the Court and opposing party of his new address of record. Plaintiff is cautioned that the Court may dismiss an action when mail delivered to the *pro se* party by the Court has been returned to the Court as not deliverable and the Court fails to receive within 60 days of this return a written communication from the *pro se* party indicating a current address. N.D. Cal. L.R. 3-11(a).

This order terminates ECF No. 20.

**IT IS SO ORDERED.**

Dated:  September 3, 2024



JON S. TIGAR
United States District Judge